# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARTIN SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2025-0575 SKR |
| | ) | |
| NFP ULTIMATE HOLDINGS, | ) | |
| LLC, NFP CANADA CORP., | ) | |
| AON PLC, AON REED | ) | |
| STENHOUSE INC., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: January 8, 2026
Decided: April 24, 2026

*Upon Consideration of Defendants' Motion to Dismiss:*

## GRANTED

## <u>MEMORANDUM OPINION AND ORDER</u>

Daniel A. Griffith, Esquire, WHITEFORD TAYLOR & PRESTON LLC, Wilmington, Delaware, *Attorney for Plaintiff*.

Joseph O. Larkin, Esquire, Elisa M.C. Klien, Esquire, Nicholas G. Borelli, Esquire, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Wilmington, Delaware. *Attorneys for Defendants NFP Ultimate Holdings, LLC, NFP Canada Corp., AON PLC and AON Reed Stenhouse Inc.*

**RENNIE, V.C. (by designation)**

## I.   INTRODUCTION

This case involves a dispute over the "true value" of equity units following a corporate buyout. Plaintiff Martin Shaw, who sold his business to the NFP Defendants and subsequently served them as an employee and consultant for over a decade, alleges he was shortchanged when the Defendants exercised their call option in June 2021. Shaw contends that the $170.00-per-unit valuation—based on a months-old third-party report—failed to account for an imminent cash distribution and a pending transaction with the AON Defendants.

The Defendants move to dismiss on both procedural and substantive grounds. The Court's analysis begins and ends with the former. Following an initial filing in Canada that disregarded the parties' forum-selection clause, Shaw's present filing arrives years after the events in question. Finding that Shaw's claims are untimely, the Court **GRANTS** the Defendants' Motion to Dismiss.

## II. BACKGROUND[1]

### A. The Parties

Plaintiff Martin Shaw ("Shaw") is an individual residing in Toronto, Ontario.[2] In 2008, Shaw sold his business to the NFP Defendants, acquiring units (the "Units") in NFP Ultimate Holdings, LLC as part of the transaction.[3] Shaw subsequently served as an employee of the NFP Defendants until June 2020, and as a consultant from June 2020 through May 2021.[4]

Defendant NFP Ultimate Holdings, LLC ("NFP") was a Delaware limited liability company with its principal place of business in New York.[5] On April 23, 2025, NFP filed a certificate of cancellation with the Delaware Secretary of State.[6]

Defendant NFP Canada Corporation (together with NFP, the "NFP Defendants") is a Canadian corporation with its principal place of business in Toronto, Ontario.[7]

---

[1] The facts are drawn from the allegations in the complaint and the documents incorporated therein. *See* D.I. No. 15 ("Am. Compl."). These allegations are presumed to be true solely for the purposes of this motion. Although it does not use any other source to determine the facts necessary to adjudicate this motion, the Court also references the parties' briefing. *See* D.I. No. 17 ("Mot."); D.I. No. 19 ("Opp'n"); D.I. No. 20 ("Reply").

[2] Am. Compl. at ¶ 10.

[3] *Id.* at ¶ 21.

[4] *Id.* at ¶¶ 22, 24.

[5] *Id.* at ¶ 11.

[6] Mot., Ex. 1.

[7] *Id.*, Ex. 2.

Defendant AON PLC is an Irish public limited company, with its principal place of business in Dublin, Ireland.[8] It was formerly known as AON Limited.[9]

Defendant AON Reed Stenhouse Inc. (together with AON PLC, the "AON Defendants" and collectively with the NFP Defendants, the "Defendants") is a Canadian corporation with its principal place of business in Toronto, Ontario.[10]

## B.    Shaw's Termination and Sale

In 2008, Shaw sold his business to the NFP Defendants for, among other consideration, units in NFP.[11] Shaw remained an employee of the NFP Defendants until June 2020.[12] At the time of his termination, Shaw's Units were subject to a Third Amended and Restated Limited Liability Agreement (the "Agreement").[13]

NFP retained Shaw as a consultant until May 2021.[14] On June 15, 2021, NFP exercised its call option under the Agreement to repurchase Shaw's Units at $170.00 per unit.[15] Under the Agreement, the purchase price is defined as the "Fair Market Value," which the Board of Managers must determine "in its good faith based on an

---

[8] Am. Compl. at ¶ 13.
[9] *Id.*
[10] *Id.* at ¶ 14.
[11] *Id.* at ¶ 2.
[12] *Id.* at ¶ 22.
[13] *Id.* at ¶ 3. The Agreement is attached to the Amended Complaint as Exhibit A. It is hereinafter referred to as the "Agreement."
[14] *Id.* at ¶ 24.
[15] *Id.* The Court acknowledges Defendants' contention that the relevant date is May 11, 2021. *See* Mot. 25. On this procedural posture, however the Court must accept all Shaw's well-pled allegations as true. Accordingly, the Court's analysis proceeds based on the June 15, 2021, date.

annual valuation of the company performed by a third party[.]"[16] The Agreement further requires the Board to update that valuation "throughout the relevant year using the valuation principles included in such annual valuation to the extent applicable and reasonably necessary[.]"[17] The price paid to Shaw was based on a third-party report dated December 31, 2020 (the "2020 Valuation").[18] When Shaw questioned the 2020 Valuation, NFP assured him that it remained accurate as of the June 15, 2021 purchase date.[19]

In late June or early July, shortly after exercising the call option, NFP authorized a cash distribution to its members amounting to approximately fifteen percent of the 2020 Valuation.[20] NFP did not disclose this distribution to Shaw at the time the option was exercised or when the distribution occurred.[21] Shaw learned of the distribution in September 2022.[22] He now alleges that NFP was planning this distribution at the time of the repurchase but purposefully concealed it to artificially deflate the unit valuation.[23]

---

[16] Agreement, Ex. 1.
[17] Agreement, Ex. 1.
[18] Am. Compl. at ¶ 24.
[19] *Id.* at ¶ 25.
[20] *Id.* at ¶ 26.
[21] *Id.*
[22] *Id.* at ¶ 28.
[23] *Id.*

In December 2023, NFP was sold to AON at a value allegedly materially higher than the 2020 Valuation.[24] Shaw further alleges that NFP and the AON Defendants were in advanced negotiations as early as June 2021, and that this information was concealed from him and omitted from the valuation used to price his Units.[25]

## C.  Procedural History

Shaw commenced a civil action in Ontario, Canada, in July 2024 (the "Canadian Action").[26] That action was voluntarily discontinued in September 2024.[27] In May 2025, filed the present action in Delaware.[28] Defendants initially moved to dismiss,[29] and Shaw filed an amended complaint (the "Amended Complaint") in response.[30] The Amended Complaint asserts five counts: Breach of Contract (Count I), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II), Breach of Fiduciary Duties (Count III), Unjust Enrichment (Count IV), and Fraudulent Concealment/Inducement (Count V).[31]

Defendants again moved to dismiss, asserting various procedural and substantive defects, including lack of personal jurisdiction, improper service of

---

[24] *Id.* at ¶ 27.
[25] *Id.* at ¶ 28.
[26] *Id.*
[27] Mot., Ex. 7.
[28] D.I. No. 1.
[29] D.I. No. 10.
[30] D.I. No. 15.
[31] Am. Compl. at ¶¶ 35–70.

6

process to NFP, untimeliness, and failure to state a claim.[32] Shaw opposed the motion,[33] but consented to the dismissal of the breach of fiduciary duty claim (Count III).[34] The Court heard oral argument on January 8, 2026. Because the Court finds that Shaw's remaining claims are time-barred, Defendants' motion is **GRANTED**.

## III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is considered under Court of Chancery Rule 12(b)(6). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party.[35] The Court will only dismiss the action if the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[36]

## IV.  DISCUSSION

### A.  Subject Matter Jurisdiction

As a preliminary matter, Shaw consented to the dismissal of his claim for breach of fiduciary duty in his briefing.[37] During oral argument, Shaw's counsel noted "[t]hat might be the only equitable claim pled[,]" and suggested that "there

---

[32] *See* Mot.
[33] *See* Opp'n.
[34] *Id.* at 21–22 n.1.
[35] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).
[36] *Id.* (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).
[37] Opp'n 21–22 n.1.

might have to be, at some point down the line, some consideration given to whether this should transfer to the Superior Court."[38]

The Court must address this threshold issue at the outset, as it concerns the Court's power to adjudicate the pending motion.[39] The Court of Chancery maintains subject matter jurisdiction in three instances: (1) where a complaint asserts an equitable claim; (2) where a complaint requests equitable relief and there is no adequate remedy available at law; or (3) where jurisdiction is conferred by statute.[40] Where the Court maintains jurisdiction over at least one count, it may exercise jurisdiction over the remaining counts under the "cleanup doctrine."[41]

Section 18-111 of the Delaware Limited Liability Company Act provides the Court with statutory jurisdiction over:

> Any action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter[.][42]

---

[38] *See* D.I. No. 22 (hereinafter "Transcript") 42:8–12.

[39] *See, e.g., In re Coinmint, LLC*, 261 A.3d 867, 904 (Del. Ch. 2021) ("[T]he Court has a duty to determine whether it has subject matter jurisdiction over a plaintiff's claims and can raise the issue *sua sponte*.").

[40] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018).

[41] *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *7 (Del. Ch. Dec. 7, 2012).

[42] 6 *Del. C.* § 18-111.

Counts I and II, which allege breach of the Agreement and the implied covenant, fall squarely within this statutory grant.[43] Counts IV and V, for unjust enrichment and fraudulent concealment, are "inexorably intertwined" with the Court's resolution of the contract-based claims. Accordingly, the Court finds it appropriate to exercise ancillary jurisdiction over these counts under the cleanup doctrine.[44]

### B. Laches and Tolling

For a court to grant a Rule 12(b)(6) motion on timeliness grounds, the complaint's allegations must demonstrate that the claim was filed too late.[45] In conducting this review, the Court "must draw the same plaintiff-friendly inferences required in a 12(b)(6) analysis."[46]

Where a plaintiff seeks a mix of legal and equitable relief, timeliness is addressed through the doctrine of laches.[47] A claim is barred by laches if there is "(i) unreasonable delay in bringing a claim by a plaintiff with knowledge thereof, and

---

[43] *See McMillan v. Nelson,* 2024 WL 3311812, at *3–4 (Del. Ch. Jul. 5, 2024) (establishing statutory jurisdiction as to both a breach of contract and breach of implied covenant claim connected to an LLC agreement).

[44] *See Duff*, 2012 WL 6096586, at *7 (applying the cleanup doctrine where legal claims were closely intertwined with statutory claims).

[45] *MW Gestion v. Sinovac Biotech Ltd.*, 2024 WL 4262246, at *3 (Del. Ch. Sep. 23, 2024) (citing *Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1193 (Del. Ch. 2022)).

[46] *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 524–25 (Del. Ch. 2005).

[47] *MW Gestion*, 2024 WL 4262246, at *3.

(ii) resulting prejudice to the defendant."[48] In this context, the Court applies the relevant statute of limitations by analogy.[49]

Under Delaware law, actions "arising out of contractual or fiduciary relations" must be brought within three years of accrual of the cause of action.[50] The parties agree that three years is the relevant period.[51]

Because Delaware is an "occurrence rule" jurisdiction, a cause of action accrues at the time of the wrongful act, even if the plaintiff is ignorant of the claim.[52] Here, the Amended Complaint alleges that NFP exercised its call option on June 15, 2021.[53] Hence, absent tolling, Shaw's claims accrued on that date and should have been filed by June of 2024. Shaw filed this action in May of 2025.[54]

Shaw proposes three grounds for tolling: (1) the Canadian Action;[55] (2) the "discovery rule";[56] and (3) fraudulent concealment.[57] While these are recognized bases for tolling under Delaware law, the statute of limitations continues to run unless the plaintiff demonstrates their application.[58]

---

[48] *Levey v. Brownstone Asset Mgmt., L.P.*, 76 A.3d 764, 769 (Del. 2013) (citing *Gallagher v. Long*, 65 A.3d 616, 2013 WL 1857552, at *2 (Del. Apr. 30, 2013) (TABLE)).
[49] *Kraft v. WisdomTree Invs., Inc.,* 145 A.3d 969, 983 (Del. Ch. 2016).
[50] 10 *Del. C.* § 8106.
[51] Opp'n at 17 ("The parties agree that the applicable statute of limitations is three years.").
[52] *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020).
[53] Am. Compl. at ¶ 24.
[54] *See* D.I. 1.
[55] Am. Compl. at ¶ 32.
[56] *Id.* at ¶ 33.
[57] *Id.* at ¶ 34.
[58] *See Lehman Bros. Hldgs., Inc. v. Kee*, 268 A.3d 178, 186 (Del. 2021).

First, the Canadian Action does not toll the limitations period. Shaw filed that action in July 2024, already more than three years after the call option was exercised.[59] Further, the Agreement contains a clear, mandatory forum selection clause requiring litigation be brought in this Court.[60] A plaintiff "cannot rely on a suit knowingly filed in the wrong forum as a basis for avoiding the application of laches."[61]

Second, the "time of discovery rule" applies only when the facts are "so hidden that a reasonable plaintiff could not timely discovery them."[62] The injury must be "inherently unknowable," and the plaintiff must be "blamelessly ignorant."[63] Tolling ends—and the clock begins—once a plaintiff is on "inquiry notice," meaning he possesses facts that would lead a person of ordinary prudence to investigate.[64]

Shaw knew that the $170 price was based on the 2020 Valuation, and he was aware that an updated valuation would be generated "later in the year."[65] A reasonably prudent person, aware that a "stale" valuation was used for a mandatory

---

[59] Am. Compl. at ¶ 28.

[60] Agreement § 22.6.

[61] *BioVeris Corp. v. Meso Scale Diagnostics, LLC*, 2017 WL 5035530, at *12 (Del. Ch. Nov. 2, 2017), *aff'd*, 202 A.3d 509 (Del. 2019).

[62] *AM Gen. Hldgs. LLC v. The Renco Gp.*, 2016 WL 4440476, at *13 (Del. Ch. Aug. 22, 2016) (quoting *Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del. Ch. 2006)).

[63] *Saunders v. Lightwave Logic, Inc.*, 342 A.3d 401, 2025 WL 1793978, at *4 (Del. Jun. 30, 2025) (TABLE).

[64] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).

[65] Am. Compl. at ¶ 25.

buyout and aware of a forthcoming update would investigate to confirm that the price "remained accurate." At the latest, as pled, Shaw was on inquiry notice no later than January 1, 2022. Because Shaw did not file this action until May 23, 2025—more than three years after that date—the discovery rule cannot save his claims.

Finally, Shaw alleges fraudulent concealment as a tolling theory. This requires pleading both the Defendants' knowledge of the alleged wrong and affirmative acts of concealment.[66] Under Court of Chancery Rule 9(b), these elements must be pled with particularity.[67] While Shaw sufficiently alleges that Defendants knew of the cash distribution and the AON negotiations, the Amended Complaint is devoid of any affirmative act of concealment beyond nondisclosure.[68] And although the NFP Defendants did not inform Shaw about either of these events, they were under no obligation to do so, except as needed to clarify any other statements they made.[69]

At this procedural posture, even if NFP's statement that the 2020 Valuation "remains accurate," was sufficiently misleading to trigger a duty to speak, Shaw still faced the same inquiry notice of issues with the 2020 Valuation as previously described. By January 1, 2022, Shaw had sufficient information to warrant an investigation into the 2020 Valuation's continued validity.

---

[66] *Dyton v. Ahern*, 2025 WL 3232911, at *10 (Del. Super. Nov. 19, 2025).
[67] *Id.*
[68] *See* Am. Compl. at ¶¶ 66–70.
[69] *See Trusa v. Nepo*, 2017 WL 1379594, at *10–11 (Del. Ch. Apr. 13, 2017) (denying affirmative disclosure obligations in an arm's length negotiation but holding that once a party chooses to speak it cannot lie or speak partially such that a statement becomes misleading).

Because Shaw has not met his burden to plead facts demonstrating that the statute of limitations was tolled beyond January 1, 2022, his claims are untimely. Having found unreasonable delay on the face of the Amended Complaint, the Court applies the presumptive prejudice required by the analogous statute of limitations. Accordingly, the doctrine of laches bars Shaw's claims.

## V.    CONCLUSION

Given that Shaw's claims are untimely on the face of the Amended Complaint and no basis for tolling applies, the Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Vice Chancellor
(by designation)